IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 15-cv-01057-PAB-MEH

EDGAR RIVERA, on behalf of himself and all others similarly situated,

     Plaintiff,

v.

EXETER FINANCE CORP.,

     Defendant.

_____

**ORDER**
_____

     This matter is before the Court on Plaintiff's Second Motion for Class

Certification and Appointment of Class Counsel [Docket No. 159] and Defendant's

Motion to Exclude Plaintiff's Evidence in Support of the Second Motion for Class

Certification and Memorandum of Law in Support Thereof [Docket No. 169].

## I.  BACKGROUND

     Defendant Exeter Finance Company is an automotive loan financing company.

Docket No. 131 at 8.[1]  One of defendant's customers, Joyce Romero, granted

defendant permission to call a cellular telephone number (the "telephone number")

about her loan.  *Id*. at 9; *see also* Docket No. 131-2 at 5, ¶ 13.  Ms. Romero was not,

however, the subscriber for the AT&T account associated with the telephone number.

Docket No. 131 at 9; Docket No. 131-4 at 5-8.  Defendant contacted Ms. Romero using

the telephone number in the spring and summer of 2014.  Docket No. 131 at 9; Docket

---

[1] These facts are undisputed unless otherwise noted.

No. 131-2 at 5, ¶ 13.  At some point later in 2014, Ms. Romero stopped using the telephone number, and it was reassigned to plaintiff Edgar Rivera.  Docket No. 131 at 9; *see also* Docket No. 131-4 at 9.  Defendant allegedly continued to call the telephone number using an automated telephone dialing system even after it was reassigned to plaintiff, who had not given permission for such automated calls.  Docket No. 30 at 7, ¶ 42.

On May 19, 2015, plaintiff filed his complaint.  Docket No. 1.  Plaintiff brings a claim for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.  Docket No. 30 at 7.  The TCPA "makes it unlawful to use an automatic telephone dialing system to call any telephone number assigned to a cellular telephone service, except calls made for emergency purposes or made with the prior express consent."  *Johnston v. USAA F.S.B.*, 12-cv-02486-LTB-KLM, 2014 WL 5439965, at *2 (D. Colo. Oct. 27, 2014).

Through discovery, plaintiff acquired defendant's records (the "Aspect Data") for calls placed with its alleged automated dialing system (the "Aspect System") and subscriber records from AT&T for individuals called by defendant (the "AT&T Data").  *See* Docket No. 107 at 5, 7, 15-17.  In an attempt to identify numbers associated with individuals who may not have consented to being called at those numbers by defendant, plaintiff "cross-referenced a list of numbers from the [Aspect Data] that had (1) a string four of more consecutive 'bad number' system results, and (2) one or more . . . 'wrong number' agent dispositions, somewhere in its dialing history."  *Id*. at 8.  Plaintiff used a "publicly available commercial database" to identify which numbers were cellular phone numbers.  *Id*.  Plaintiff then used the AT&T Data to identify phone

numbers that were reassigned.  *See id*. at 15-17.

On February 17, 2017, plaintiff filed his first motion for class certification.  Docket No. 107.  Plaintiff requested certification of a class consisting of:

> Individuals in the United States to whom Defendant (1) made more than one call (2) to such individual's cellular telephone number (3) using its Aspect Unified IP 7.1 dialing system (4) in an attempt to reach a prior subscriber of such individual's cellular telephone number.

Docket No. 107 at 5.   Plaintiff stated that "over 800 consumers" he had identified from the Aspect Data and AT&T records met this class definition.  *Id*.

On October 16, 2017, the Court denied plaintiff's motion because plaintiff was not a member of the proposed class and, therefore, lacked standing to represent the class.  Docket No. 158 at 4.  In particular, plaintiff did not allege or show that defendant ever called his reassigned phone number "in an attempt to reach a prior subscriber" of his phone number.  *Id*. at 3-4.  The Court recognized that it could modify the class definition, but concluded that it was "unclear whether the Court could 'limit or modify class definitions to provide the necessary precision' that would make plaintiff a member of the class without creating other standing or class certification issues."  *Id*. at 4 (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)).  The Court, however, granted plaintiff leave to file another motion for class certification, finding it was "appropriate for plaintiff to make a second attempt to propose an 'ascertainable class supported by the evidence and a reliable methodology and that meets the requirements of Rule 23.'"  *Id*. at 4-5 (quoting *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 561 (D. Colo. 2014)).

After the denial of plaintiff's first certification motion, plaintiff states that he

"re-analyzed the list he previously submitted in [Docket No.] 152-3 and eliminated any activation events that might . . . *conceivably* be attributed to something other than a number reassignment, in order to ensure that the Class does not include individuals Exeter had consent to call."  Docket No. 159 at 6.  As part of this reanalysis, plaintiff states that he

> identified the first and last date (through May 9, 2016-the date Aspect Data was produced in discovery) on which Exeter called each number using the Aspect System. *See* Exhibit B (columns G and H).  He then determined whether Exeter called the number during a subscriber's activation period.  *Id.* (column I).  Mr. Rivera additionally refined the list to include (1) only those where the AT&T Data shows a prior subscriber of the same wireless number, *id.* (column J), (2) where the Exeter calls began during or even before the prior subscriber's activity period, *id.* (column K), and (3) where the prior subscriber can be identified by name—as opposed to the name of a prepaid service, *id.* (column L).

Docket No. 159 at 6-7; *see also* Docket No. 162 (spreadsheet with corresponding columns).  Plaintiff claims that he "then excluded entries where the subscriber's name or address were the same or similar to the prior subscriber's name or address [to] further minimize[] the possibility that individuals identified by an activation reflect an Exeter customer."  Docket No. 159 at 7.  Plaintiff also "removed activations reflecting businesses or with false or inadequate name or address information contained in the AT&T Data."  *Id.*  At the end of this process, plaintiff was left with a list of 482 cellular phone subscribers.  *Id.* at 3; *see also* Docket No. 161 (list of 482 names, addresses, and phone numbers).

On November 30, 2017, plaintiff filed his second motion for class certification. Docket No. 159.  Plaintiff requests that the Court certify a class consisting of those identified on his list of 482 names.  *Id.* at 20.  He further requests appointment of

4

himself as class representative and Thompson Consumer Law Group, PLLC as class counsel.  *Id*.  On January 18, 2018, defendant filed its motion to exclude.  Docket No. 169.  Defendant requests that the Court strike the declaration of plaintiff's counsel attached to plaintiff's first motion for class certification, the list of names that would form the class, and the underlying spreadsheet from which the names are taken.  *Id*. at 13.

## II.  STANDARD OF REVIEW

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed R. Civ. P. 23(a) as well as the requirements of one of the three types of classes in Rule 23(b).  "The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied."  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004)).  In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," but it "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints."  *Id*. (internal quotation marks omitted).  "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks omitted).

## III.  ANALYSIS

Before addressing the four prerequisites set forth in Rule 23(a), the Court must

determine whether plaintiff has proposed an ascertainable class.[2]   "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards*, 2012 WL 4378219, at *4 (internal quotation marks omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (internal quotation marks omitted)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014).

The Court finds that plaintiff has failed to show an ascertainable class. Plaintiff's theory of class definition is novel – neither party cites a case, and the Court has been unable to discover a case, where a proposed class has simply been defined based on a list of people created by the named plaintiff. *See* Docket Nos. 159, 170, 184. Of course, lists of names regularly play a role in class action litigation because they are generated by the parties (often the defendant) based on a set of objective criteria that forms the class definition. *See, e.g., Singer v. AT & T Corp.*, 185 F.R.D. 681, 684 (S.D. Fla. 1998) (recommending certification of a class of "past and present AT&T customers who were billed twice for key equipment at the same installation location address in a single billing cycle" as reflected in a "list of 30,000" customers that was produced by AT&T). Additionally, classes have been defined based on the objective characteristics of individuals on a preexisting list. *See, e.g., Krakauer v. Dish Network L.L.C.*, 311

---

[2]Courts have treated ascertainability both as a prerequisite to the class certification inquiry under Rule 23(a) and as an element of the numerosity requirement. *See Edwards v. Zenimax Media Inc.*, No. 12-cv-0411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012).

F.R.D. 384, 388 (M.D.N.C. 2015) (certifying a class of individuals on the national do not call list "for at least 30 days, but who received telemarketing calls" from a defendant and a class of individuals on the defendants' internal do not call lists "who received telemarketing calls" from a defendant).  Plaintiff's motion is different, however, because the only characteristic that he asserts the potential class members share is that their names appear on a list he created.  Docket No. 159 at 3.

While plaintiff is technically correct that his list provides a criterion to determine whether an individual is a member of the proposed class, and the class can therefore be "ascertained" by reference to that list, *see* Docket No. 159 at 8 (quoting *Warnick*, 301 F.R.D. at 556), a person's inclusion on a list created by plaintiff is not a characteristic of that person or otherwise the type of objective criterion that is typically used to define a class.  In effect, plaintiff seeks to represent, and to have his counsel appointed class counsel for, a list of people that plaintiff has identified.  And plaintiff seeks to do so through an opt-out class action pursuant to Fed. R. Civ. P. 23(b)(3), without first securing the listed individuals' consent to be so represented.  While the Supreme Court has recognized that requiring class members to "affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit," *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985), this does not suggest that a named plaintiff may simply aggregate claims by creating a list of individuals who share a common claim and then seek class certification.

Further, there is reason to doubt the reliability of plaintiff's identification of the

7

individuals on his list.  Plaintiff admits in his reply that one individual on his list never received an actionable call from defendant.  Docket No. 184 at 9.  The fact that one member of a proposed class lacks a viable claim is not a reason to deny certification where the class is defined by the class members' characteristics.  *See Warnick*, 301 F.R.D. at 557 ("A class is overbroad, and should not be certified, if it includes 'a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct.'" (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)).  But it raises doubts in these circumstances, where the plaintiff seeks to define the class by the names of individuals on a list he has created.  In particular, it calls into question plaintiff's arguments that the steps he has taken since his first certification motion was denied, which include subjective determinations about who should be included on the list, have resulted in a list that defines an appropriate class.  As defendant points out, plaintiff does not explain how he made the subjective determination that data entries were "similar to the prior subscriber's name or address" or on what basis he concluded that activations "reflect[ed] businesses or [had] false or inadequate name or address information."  *See* Docket No. 159 at 7.

While a "judge may ask for the parties' help" in defining an appropriate class, ultimately "the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)."  *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015).  Further, the "decision to grant or deny certification of a class belongs within the discretion of the trial court."  *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1121 (10th Cir. 2017) (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280,

1287 (10th Cir. 1999) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988))).

Plaintiff's proposed class, which is defined by a list of names identified by plaintiff,

cannot be "ascertained by reference to objective criteria." *Donaca*, 303 F.R.D. at 397.

Accordingly, the Court will deny plaintiff's motion for class certification. *See Carrera*,

727 F.3d at 311-12 (vacating order granting class certification because the plaintiff had

failed to satisfy the ascertainability requirement); *Donaca*, 303 F.R.D. at 397 (finding

class certification inappropriate because the members of the class could not be

ascertained); *Warnick*, 301 F.R.D. at 559 (denying class certification, without

addressing the remaining Rule 23 requirements, because the class was "not sufficiently

ascertainable and [was] overbroad").

Because the Court does not grant certification or rely on any portion of the

declaration of David N. McDevitt or the exhibits challenged by defendant, the Court will

deny defendant's motion to exclude, Docket No. 169, as moot.

## III.  CONCLUSION

Accordingly, it is

**ORDERED** that Plaintiff's Second Motion for Class Certification and Appointment

of Class Counsel [Docket No. 159] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion to Exclude Plaintiff's Evidence in Support of

the Second Motion for Class Certification and Memorandum of Law in Support Thereof

[Docket No. 169] is **DENIED** as moot.

DATED March 31, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge